**WO**  SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karl L. Guillen,<br><br>      Plaintiff,<br><br>vs.<br><br>Quincy Owens, et al.,<br><br>      Defendants. | No. CV 10-0226-PHX-MHM (LOA)<br><br>**ORDER** |

Plaintiff Karl L. Guillen, who is confined in the Arizona State Prison Complex-Eyman, Special Management Unit I (SMU I), in Florence, Arizona, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and paid the filing fee. (Doc. 9, 11.)[1] The Court dismissed the Complaint with leave to amend. (Doc. 14.) Plaintiff has filed a First Amended Complaint and a motion for injunctive relief. (Doc. 17, 18.) The Court will order Defendants Ryan, Crabtree, Baca, Larson, Owens, Wilson, Fisher, Yielding, Berger, O'Brien, Putnam, Roberts, Mendoza, Aragon, Hatfield, Renault, White, and Carrillo to answer Counts I (in part), II (in part), III (in part), and V (in part) of the First Amended Complaint and will dismiss the remaining claims and Defendants without prejudice. The Court will deny the motion for injunctive relief.

**I.  Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against

---

[1] "Doc." refers to the docket number of filings in this case.

**TERMPSREF**

1  a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C.
2  § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised
3  claims that are legally frivolous or malicious, that fail to state a claim upon which relief may
4  be granted, or that seek monetary relief from a defendant who is immune from such relief.
5  28 U.S.C. § 1915A(b)(1), (2).

6        A pleading must contain a "short and plain statement of the claim *showing* that the
7  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not
8  demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
9  unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
10 "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
11 statements, do not suffice." Id.

12       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
13 claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly,
14 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content
15 that allows the court to draw the reasonable inference that the defendant is liable for the
16 misconduct alleged." Id. "Determining whether a complaint states a plausible claim for
17 relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
18 experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual
19 allegations may be consistent with a constitutional claim, a court must assess whether there
20 are other "more likely explanations" for a defendant's conduct. Id. at 1951. But as the
21 United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue
22 to construe *pro se* filings liberally." Hebbe v. Pliler, No. 07-17265, 2010 WL 4673711 at *3
23 (9th Cir. Nov. 19, 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less
24 stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v.
25 Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

26 **II.    First Amended Complaint**

27       Plaintiff alleges seven counts for violation of due process and 42 U.S.C. § 1981,
28 unconstitutional conditions of confinement or threats to his health, and retaliation. Plaintiff

sues the following current or former employees of the Arizona Department of Corrections (ADC), who worked at the Central Office:  Current Director Charles Ryan and former directors, Terry Stewart and Dora Schriro; Appeals Unit Administrator Hauser; Offender Services Administrator Stacey Crabtree; and Corrections Officer (CO) IV Baca. He also sues the following ADC employees who work or worked at the Lewis Complex at relevant times: Complex Warden Berry Larson; Deputy Warden Quincy Owens; Captains Wilson, Richard Fisher, and John Yielding; Lieutenants Paula Berger and Michelle O'Brien; Sergeants Putnam and Smith; CO IV Roberts; CO IIIs Mendoza and Shannon Aragon; CO IIs Hatfield and Cristina Renault.  Plaintiff also sues the following current or former ADC employees who work or worked at the Eyman Complex: Warden W. White; Deputy Warden Deleena Carrillo; Assistant Deputy Warden Tuersbuns; Sergeant Sturm; and CO III Cioni.  Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

Plaintiff's claims relate to (a) his transfer from the Rast Unit in the Lewis Complex to the Rast Detention Unit (RDU); and (b) his subsequent transfer from the RDU to SMU I, in the Eyman Complex.  Plaintiff challenges the propriety of the transfers, the consequences flowing from the transfers, and his prolonged confinement in supermax units, such as SMU I or SMU II.  Although not a model of clarity, the following facts appear in the First Amended Complaint, except as otherwise indicated:

From January 1, 1996 until June 6, 2006, Plaintiff was held in supermax units.  While in supermax units, Plaintiff's contact with other inmates and staff was extremely limited, he was confined for 23 hours a day, and he was allowed only one to five hours of recreation per week in a concrete bunker with a wire mesh ceiling. (Doc. 17 at 4.)  About 10 years ago, Plaintiff began suffering from herpes zoster (shingles) and has since suffered from post-herpetic neuralgia, which Plaintiff states is exacerbated by environmental conditions and stress.[2]  Plaintiff contends these conditions resulted in or were aggravated by his long-term

---

[2] Herpes zoster is "characterized by an eruption of vesicles on one side of the body following the course of a nerve due to inflammation of ganglia and dorsal nerve roots resulting from activation of the virus, which in many instances has remained latent for years

- 3 -

TERMPSREF

1  isolation and the lack of exposure to sunlight.  Plaintiff also suffered from allergies and
2  asthma.
3       On June 6, 2006, Plaintiff was transferred from supermax to the Rast Unit, ADC's
4  only close custody unit.[3]  On July 10, 2008, Plaintiff commenced a civil rights case, Guillen
5  v. Thompson, No. CV08-1279-PHX-MHM, in this district.
6       In February 2009, Plaintiff was charged by Defendants Berger, Yielding, Owens, and
7  Larson with threatening staff after he filed or gave staff a notice of intent to sue. (Id. at 5.)
8  Plaintiff claims that Sergeant Smith received a telephone call during Plaintiff's disciplinary
9  hearing ordering Smith to find him guilty.  Smith found Plaintiff guilty of a minor violation
10 but did not impose any sanction.
11      On May 7, 2009, Berger and Wilson "threatened" Plaintiff; Plaintiff does not describe
12 the threat or the surrounding circumstances.[4] While Plaintiff was absent, Defendants Larson,
13 Owens, Wilson, Hatfield, Putnam, and Fisher planted unspecified incriminating evidence in
14 his cell or during a subsequent undocumented inventory search.[5] (Id. at 5A.).  The next day,

---

following a primary chickenpox infection; the condition is self-limited but may be accompanied by or followed by severe postherpetic pain."  Stedman's Medical Dictionary, 180030 (27th ed. 2000).  Neuralgia is "[p]ain of a severe, throbbing, or stabbing character in the course or distribution of a nerve."  Id. at 271340.

[3] Plaintiff may have been classified as a close custody inmate because he had previously renounced any gang affiliation.  On September 13, 1999, Plaintiff pleaded no contest to the second degree murder of another inmate.  See State v. Guillen, No. 2-CA-CR 2009-0411-PR, 2010 WL 1511555 at *1 (Ariz. Ct. App. Apr. 15, 2010); see also Guillen v. Stewart, No. CV01-1337-PHX-MHM (D. Ariz. Dec. 28, 2005) (order denying Rule 60(b) motion from denial of habeas petition).  Plaintiff claims the killing was wrongly characterized as gang-related by prison officials, rather than self-defense, but he debriefed, i.e., renounced, any gang affiliation in 2004. (See doc. 17 at 4B.)

[4] "Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation[.]'" Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (quoting Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Machin v. Costas, No. Civ. 09-444-IEG (WVG), 2009 WL 3839325 at *15 (S.D. Cal. Nov. 16, 2009).

[5] Plaintiff fails to allege facts to support how he knows that these Defendants planted the evidence.

1  Plaintiff was "arrested" for gambling and taken to a "hot cell"– so-called because
2  temperatures exceeded 90° during the day – in RDU pending an investigation. According
3  to Plaintiff, Defendants Larson, Owens, Roberts, Wilson, Hatfield, Berger, O'Brien,
4  Renault, Yielding, and Aragon caused him to be moved to the hot cell knowing that
5  temperature extremes in the cell could or would seriously aggravate his post-herpetic
6  neuralgia, allodynia, and hyperalgesia.[6]  (Id. at 3, 5C.)  For the first four days in the hot cell,
7  Plaintiff was denied medications until he passed out and had to receive emergency care,
8  including an injection for pain, and other medications.  (Id. at 5C.)  Only after he received
9  emergency care did he receive bedding and toiletries in the hot cell.  (Id.)  Plaintiff continued
10 to be held in that cell for two and half months.

11 While in RDU, Plaintiff was charged with a disciplinary infraction for gambling.
12 Such infractions are usually treated as minor and information from confidential informants
13 (CI) is not considered.  However, in this instance, information from a CI– Inmate Arnold–
14 was considered, and Plaintiff was found guilty of a minor infraction for which no sanction
15 was imposed.[7]  According to Plaintiff, information from Arnold was considered in deciding
16 the disciplinary charge in order to justify adding Arnold to Plaintiff's "Do Not House With"
17 (DNHW) list, which was in turn used to support an administrative override to justify moving
18 Plaintiff from the only close custody unit back to supermax.  Plaintiff was not afforded notice
19 that a CI would provide evidence against him or an opportunity to contest the addition of
20 Arnold to his DNHW list.  Defendants Ryan, Hauser, and Fisher denied Plaintiff's appeals
21 from the disciplinary charge.  (Id. at 5A.)

22 On July 21, 2009, Defendants Larson, Owens, Renault, Roberts, Baca, Crabtree,
23 Mendoza, Wilson, and Berger transferred Plaintiff from RDU back to supermax pursuant to

---

[6] Allodynia is defined as a "[c]ondition in which ordinarily nonpainful stimuli evoke pain." Stedman's Medical Dictionary, 14080 (27th ed. 2000).  Hyperalgesia is defined as "[e]xtreme sensitivity to painful stimuli."  Id. at 190850.

[7] Plaintiff asserts that he knew that Owens was permitting inappropriate relations between staff and inmates and that Owens perceived Plaintiff as a threat to his career.  (Id. at 5C.)  These assertions are vague and unsupported by factual allegations.

1  the administrative override and despite Plaintiff's classification at a lower custody level than
2  that for supermax.  According to Plaintiff, conditions in supermax have and are again
3  exacerbating his medical conditions by causing stress, which in turn causes him to suffer
4  severe pain.

**IV.    Failure to State a Claim**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

**A.    Time-Barred Allegations**

Plaintiff makes allegations against various Defendants for events that occurred more than two years before the lodging of his Complaint in this case, including claims against former ADC director Stewart.  The failure to state a claim includes circumstances where a defense is complete and obvious from the face of the pleadings. Franklin v. Murphy, 745 F.2d 1221, 1228 (9th Cir. 1984) (applying former § 1915(d) now codified at 28 U.S.C. § 1915(e)(2)(B)).  Further, a court may raise the defense of statute of limitations *sua sponte*. See Levald, Inc. v. City of Palm Desert, 998 F.2d 680, 687 (9th Cir. 1993); see also Hughes v. Lott, 350 F.3d 1157, 1163 (11th Cir. 2003) (appropriate to dismiss prisoner's complaint *sua sponte* as time-barred under § 1915(e)(2)(B)); Nasim v. Warden, Maryland House of Corr., 64 F.3d 951, 956 (4th Cir. 1995) (*en banc*) (same); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (same); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (same); Johnson v. Rodriguez, 943 F.2d 104, 107-08 (1st Cir. 1991) (same).

In § 1983 actions, the Court applies the statute of limitations of the forum state for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266, 274-76 (1985); TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999); Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir.

1991). The Arizona statute of limitations for personal injury actions is two years. See A.R.S. § 12-542(1); Madden-Tyler v. Maricopa County, 943 P.2d 822, 824 (Ariz. Ct. App. 1997); Vaughan, 927 F.2d at 478. The Court must also apply any state rule for tolling to actions brought under § 1983. Hardin v. Straub, 490 U.S. 536, 544 (1989); TwoRivers, 174 F.3d at 992. Arizona provides for tolling of the statute of limitation after a cause of action accrues for the period during which a plaintiff was less than 18 years old or of unsound mind. A.R.S. § 12-502.

Plaintiff in part alleges claims concerning his conditions of confinement in supermax facilities between 1996 and 2006. These claims accrued more than two years before Plaintiff lodged his Complaint in this action, and are therefore time-barred. "[A] claim generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998). Plaintiff knew of the conditions in supermax contemporaneously with his confinement there and any claim concerning his supermax confinement, and conditions thereof, accrued contemporaneously with such confinement. Plaintiff lodged his Complaint in this case on January 29, 2010. Therefore, Plaintiff's allegations concerning his confinement in supermax, and conditions thereof, occurring prior to January 29, 2008, are time-barred and will be dismissed.

Plaintiff's claims against Stewart will also be dismissed. Stewart left ADC in 2002.[8] Accordingly, all of Plaintiff's allegations against him are time-barred and will be dismissed.

**B.   Schriro**

Plaintiff generally alleges that Schriro knew that long-term confinement in supermax facilities presented a substantial threat to Plaintiff's physical and mental health but she "carried on" former Director Stewart's expressed lack of concern about the psychological well-being of inmates in supermax facilities. Plaintiff also asserts that Schriro created too many supermax or maximum security cells and too few medium and close-custody cells,

---

[8] See http://www.azcorrections.gov/Prisca_Divisions_Director_History.aspx (viewed November 4, 2010).

- 7 -

TERMPSREF

which resulted in Plaintiff being confined in maximum security units despite being classified at lower custody levels.

Schriro served as ADC's Director between 2003 and January 2009. See supra, n.11. Plaintiff was transferred out of supermax in 2006, while Schriro was Director. Plaintiff was not transferred back to supermax until July 2009, months after Schriro left ADC. To the extent that Plaintiff's claims against Schriro are predicated on his confinement in supermax between 2003 and 2006, his claims are time-barred. To the extent that his claims against Schriro are predicated on his transfer back to supermax confinement in 2009, Schriro was no longer the Director. Plaintiff's general contention that Schriro failed to appropriately allocate the number of maximum and medium cells is not sufficient to state a constitutional claim against her. For these reasons, Schriro will be dismissed.

**C.    Sturm**

Plaintiff names Eyman Sergeant Sturm as a Defendant in his First Amended Complaint. Plaintiff fails to allege any facts against Sturm. Accordingly, Sturm will be dismissed.

**D.    Conspiracy Allegations**

The First Amended Complaint is replete with assertions that Defendants conspired to violate Plaintiff's rights. In addition, in Count VII, Plaintiff alleges a conspiracy to violate his constitutional rights pursuant to 42 U.S.C. § 1981.

Conclusory allegations of a conspiracy are insufficient to state a claim. See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (explaining the requirements of a conspiracy claim under § 1983); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.) (a court need not accept as true allegations that are merely conclusory, deductions of fact, or unreasonable inferences), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001); Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) (stating that conclusory allegations of conspiracy do not support a § 1983 claim). Further, to state a conspiracy claim under § 1981, a plaintiff must allege facts supporting that he suffered discrimination based upon his race. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1487 (9th Cir. 1995); see

1   also Mian v. Donaldson, Lufkin & Jenrette, 7 F.3d 1085, 1087 (2d Cir. 1993); accord, Morris
2   v. Office Max, Inc., 89 F.3d 411, 433 (7th Cir. 1996); Green v. State Bar of Texas, 27 F.3d
3   1083, 1086 (5th Cir. 1994).

4   Plaintiff does not allege any facts to support discrimination or a conspiracy motivated
5   by his race.  He therefore fails to state a claim under § 1981 and Count VII will be dismissed.
6   Plaintiff's other conspiracy allegations are vague and conclusory and are insufficient to state
7   a claim.  Accordingly, to the extent that Plaintiff asserts a claim for conspiracy against any
8   Defendant, such claim will be dismissed.

9   **E.    Count II (in part)**

10   In Count II (in part), Plaintiff alleges that Ryan is disciplining him by serving him
11   only one hot meal per day in supermax.  (Doc. 17 at 4A.)  This allegation does not rise to the
12   level of a constitutional violation and will be dismissed.  See LeMaire v. Maass, 121 F.3d
13   1444, 1456 (9th Cir. 1993).

14   Plaintiff also alleges that Ryan, White, and Carrillo denied him adequate medical care
15   by making him wait for six and a half months for a medical examination and treatment of
16   unspecified serious physical injuries.  (Doc. 17 at 4A.)  He further alleges that they have
17   denied him a medical furlough to Italy or to his mother's home in Oro Valley.  (Id.)  These
18   allegations are vague and conclusory.  Accordingly, these allegations will also be dismissed.

19   **F.    Count III (in part)**

20   Plaintiff designates Count III as a claim for violation of his due process rights.
21   Liberty interests that entitle an inmate to due process are "generally limited to freedom from
22   restraint which, while not exceeding the sentence in such an unexpected manner as to give
23   rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical
24   and significant hardship on the inmate in relation to the ordinary incidents of prison life."
25   Sandin v. Conner, 515 U.S. 472, 484 (1995) (internal citations omitted).  In analyzing
26   whether a hardship is atypical and significant, three guideposts to consider are: (1) the
27   conditions of confinement; (2) the duration of the condition and the degree of restraint
28   imposed; and (3) whether the disciplinary sanction will affect the duration of the prisoner's

1  sentence. Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003); Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996). Courts have found the existence of atypical and significant hardships in a very limited circumstances. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 221-24 (2005) (holding inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); Serrano v. Francis, 345 F.3d 1071, 1078-79 (9th Cir.2003) (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons gave rise to a liberty interest); Ramirez, 334 F.3d at 861 (directing district court to consider two-year duration of administrative segregation in determining whether placement imposed atypical and significant burden). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976). Thus, a claim that prison officials "added things" to an appeal to mask procedural errors does not, for example, meet this standard because inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez, 334 F.3d at 860 (citing Mann, 855 F.2d at 640).

In Count III, Plaintiff alleges in part that in February 2009, Larson, Owens, Berger, and Yielding disciplined him for filing a notice of intent to file a § 1983 or tort claim against them. Plaintiff does not allege that he was subjected to atypical and significant hardship as a result of such discipline. This portion of Count III will be dismissed.

Plaintiff also alleges that Smith found him guilty of a minor infraction after being ordered to do so. Plaintiff acknowledges that he was not sanctioned as a consequence. He therefore fails to state a claim against Smith on this basis and this allegation will be dismissed.

Plaintiff also alleges that Ryan, Hauser, and Fisher violated due process by denying his appeal. Where a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to

1  remedy the alleged unconstitutional behavior does not amount to active unconstitutional
2  behavior for purposes of § 1983. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999);
3  accord Mintun v. Blades, No. CV-06-139-BLW, 2008 WL 711636 at *7 (D. Idaho Mar. 14,
4  2008); Stocker v. Warden, No. 1:07-CV-00589LJODLBP, 2009 WL 981323 at *10 (E.D.
5  Cal. Apr. 13, 2009). Consequently, Plaintiff fails to state a claim against Ryan, Hauser, or
6  Fisher based upon their denial of his appeal in this portion of Count III and it will be
7  dismissed.

8  **G.   Count IV**

9  In Count IV, Plaintiff contends that Ryan, Larson, Owens, Wilson, Roberts, Fisher,
10 Smith, Berger, Hatfield, Putnam, Mendoza, and Hauser transferred him to supermax in
11 retaliation for filing Guillen v. Thompson, CV08-1279-PHX-MHM. To state a constitutional
12 claim for retaliation, a plaintiff must allege that a defendant acting under color of state law
13 took adverse action against him because he engaged in protected conduct, the adverse action
14 was not narrowly tailored to advance legitimate goals, and the adverse action chilled the
15 plaintiff's exercise of his First Amendment rights or caused him to suffer more than minimal
16 harm. Rhodes v. Robinson, 408 F.3d 559, 567-58 (9th Cir. 2005); see also Hines v. Gomez,
17 108 F.3d 265, 267 (9th Cir. 1997).

18 Plaintiff's assertion that he was transferred to supermax in retaliation for filing his
19 earlier case is conclusory. Further, although Plaintiff sued some of the same persons in
20 CV08-1279 against whom he now asserts retaliation, i.e., Berger, Yielding, Mendoza,
21 Hatfield, and Smith, each of those persons was dismissed from that suit prior to service.
22 Plaintiff otherwise fails to set forth facts to support that any Defendant caused his transfer
23 in retaliation for filing that case. Moreover, Plaintiff has not alleged that the transfer in any
24 way chilled the exercise of his First Amendment or other constitutional rights. Accordingly,
25 Plaintiff fails to state a claim in Count IV and it will be dismissed.

26 **H.   Count V (in part)**

27 In Count V (in part), Plaintiff alleges that Ryan, Larson, Owens, Hatfield, Roberts,
28 Wilson, Carrillo, and Renault caused him to be transported to supermax with another inmate

1  who had previously threatened to assault protective segregation (close custody) inmates.
2  (Doc. 17 at 5D.)  Plaintiff asserts they did so in the hope that the inmate would assault him
3  and rid them of a troublesome litigator.  Plaintiff claims their plan failed because Plaintiff
4  had previously assisted that inmate.  These allegations are vague and conclusory and
5  insufficient to state a claim.  This portion of Count V will be dismissed.

### I.     Count VI

In Count VI, Plaintiff alleges that Defendants Ryan, Crabtree, Baca, Carrillo, Tuersbuns, and Cioni violated his due process rights by failing to comply with ADC policies and procedures when transferring him to indefinite supermax confinement. Non-compliance with prison procedures or policies does not, absent more, rise to the level of a constitutional violation. See Wilkinson, 545 U.S. at 222-23.  As stated below, the Court will require a response to Plaintiff's claims in other counts for denial of due process and/or unconstitutional conditions of confinement based on Plaintiff's indefinite confinement in supermax.  But Plaintiff does not otherwise state a constitutional claim in Count VI based on the mere failure to comply with prison procedures or policies.  Accordingly, Count VI will be dismissed.

### V.     Claims for Which an Answer Will be Required

In Count I (in part), Plaintiff adequately alleges that Defendants Larson, Owens, Roberts, Wilson, Hatfield, Berger, O'Brien, Mendoza, and Renault caused him to be transferred to RDU absent a legitimate penological reason in violation of due process and thereby subjected him to unconstitutional conditions of confinement that jeopardized his health.  In Counts II (in part), III (in part), and V (in part), Plaintiff adequately alleges that Ryan, Crabtree, Baca, Larson, Owens, Renault, Roberts, Mendoza, Wilson, Aragon, O'Brien, Yielding, and Berger caused him to be transferred to supermax for an indefinite period and under conditions posing a serious risk to health in violation of due process and the Eighth Amendment.  Defendants Ryan, Crabtree, Baca, Larson, Owens, Wilson, Fisher, Yielding, Berger, O'Brien, Putnam, Roberts, Mendoza, Aragon, Hatfield, Renault, White, and Carrillo will be required to respond to Counts I (in part), II (in part), III (in part), and V (in part).

### IV.    Motion for Injunctive Relief

As noted above, Plaintiff has filed a motion for injunctive relief seeking to require prison officials to transfer him out of supermax. (Doc. 18.) Plaintiff contends that prison officials used administrative overrides to justify transferring him back to supermax for retaliatory purposes. Citing Austin v. Wilkinson, 545 U.S. 209 (2005), Plaintiff contends that the transfer without notice and an opportunity to be heard violated his due process rights.

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008); Am. Trucking Assoc., Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). The moving party has the burden of proof on each element of the test. Environmental Council of Sacramento v. Slater, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000). In addition, the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in Winter. Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1052 (9th Cir. 2010). Under that test, after Winter, a preliminary injunction is appropriate when a plaintiff demonstrates that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor," so long as the plaintiff also shows a likelihood of irreparable injury and that an injunction is in the public interest. Id. at 1053 (citing Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc)).

At this juncture, no Defendant has yet been served or ordered to respond to the First Amended Complaint. In addition, Plaintiff has not demonstrated that he is likely to succeed on the merits, to suffer irreparable harm, that the balance of equities tips in his favor, and that an injunction is in the public interest. He also has not demonstrated that the balance of hardships tip sharply in his favor. Plaintiff's motion for injunctive relief will be denied.

**V.     Warnings**

**A.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other

1  relief with a notice of change of address.  Failure to comply may result in dismissal of this
2  action.

3  **B.    Copies**

4  Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy
5  of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate
6  stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit
7  an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply
8  may result in the filing being stricken without further notice to Plaintiff.

9  **C.    Possible Dismissal**

10 If Plaintiff fails to timely comply with every provision of this Order, including these
11 warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet,
12 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to
13 comply with any order of the Court).

14 **IT IS ORDERED:**

15 (1)    Counts I (in part), II (in part), III (in part), IV, V (in part), VI, and VII and
16 Defendants Stewart, Schriro, Tuerbuns, Sturm, Cioni, Smith, and Hauser are **dismissed**
17 without prejudice.

18 (2)    Defendants Ryan, Crabtree, Baca, Larson, Owens, Wilson, Fisher, Yielding,
19 Berger, O'Brien, Putnam, Roberts, Mendoza, Aragon, Hatfield, Renault, White, and Carrillo
20 must answer Counts I (in part), II (in part), III (in part), and V (in part).  (Doc. 17.)

21 (3)    The Clerk of Court must send Plaintiff a service packet including the First
22 Amended Complaint, this Order, and both summons and request for waiver forms for
23 Defendants Ryan, Crabtree, Baca, Larson, Owens, Wilson, Fisher, Yielding, Berger,
24 O'Brien, Putnam, Roberts, Mendoza, Aragon, Hatfield, Renault, White, and Carrillo.  (Doc.
25 17.)

26 (4)    Plaintiff must complete and return the service packet to the Clerk of Court
27 within 20 days of the date of filing of this Order.  The United States Marshal will not provide
28 service of process if Plaintiff fails to comply with this Order.

(5) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(I).

(6) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(7) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The Marshal must immediately file requests for waivers that were returned as undeliverable and waivers of service of the summons. If a waiver of service of summons is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

   (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

   (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(8) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal,**

**not the Plaintiff.**

(9) Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(10) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(11) Plaintiff's motion for injunctive relief is **denied**. (Doc. 18.)

(12) This matter is referred to Magistrate Judge Lawrence O. Anderson pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 29th day of November, 2010.

_____
Mary H. Murgula
United States District Judge